IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODERICK JOHNSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 21-4860 |
| | : | |
| v. | : | |
| | : | |
| CITY OF READING, ANGEL CABRERA, | : | |
| BRUCE DIETRICH, COUNTY OF | : | |
| BERKS, MARK C. BALDWIN, and | : | |
| EDWARD D. RATAJACK, executor of the | : | |
| estate of Joseph Stajkowski, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                February 6, 2023

The plaintiff was convicted of two counts of first-degree murder in 1997 and one count of first-degree murder in 1998. Over the following decades, after multiple appeals and post-conviction petitions, these convictions were vacated for the government's failure to disclose material exculpatory evidence at trial. With his convictions vacated, the plaintiff brought the instant civil rights action in which he asserts two Pennsylvania tort claims and numerous claims arising under the United States and Pennsylvania Constitutions against the city responsible for investigating his criminal actions, two former city detectives, the county responsible for his prosecution, the district attorney who prosecuted his criminal cases, and the executor of the estate of a former county detective.

Currently before the court are two motions to dismiss portions of this action. In the first motion to dismiss, the city and two of its detectives ask the court to dismiss five of the plaintiff's claims, arguing they are barred by the applicable statutes of limitations, precluded on the basis of issue preclusion, and otherwise fail to state a claim upon which relief may be granted. In the second

motion to dismiss, the district attorney asks the court to dismiss all three of the claims against him, arguing that he is entitled to absolute immunity from the federal civil rights claims, and that the Pennsylvania Constitution does not create a private right of action for recovering money damages. For the reasons discussed below, the court grants in part and denies in part the first motion to dismiss and grants the second motion to dismiss.

## I.   UNDERLYING STATE COURT CRIMINAL ACTIONS, PROCEDURAL HISTORY, AND SUMMARY OF ALLEGATIONS IN COMPLAINT

This action arises from two separate criminal actions in which the plaintiff, Roderick Johnson ("Johnson"), was twice convicted of first-degree murder, and in which his convictions were later vacated. The court will briefly summarize both actions prior to recounting the procedural history of the instant action.

### A.   *Commonwealth v. Roderick Johnson*, Berks County Criminal Docket No. CP-06-CR-118-1997 ("*Johnson I*")

On December 12, 1996, a warrant was issued for Johnson's arrest in connection with the December 8, 1996 shooting deaths of Damon and Gregory Banks. *See* Pl.'s Resp. in Opp'n to Defendants City of Reading and Angel Cabrera's Mot. to Dismiss ("Pl.'s Opp'n to City MTD"), Ex. 1, Doc. No. 14-2.[1] Later that day, Johnson was arrested and the Berks County District

---

[1] In general, when considering a motion to dismiss the court "may not consider matters extraneous to the pleadings," without converting the motion into a motion for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Nevertheless, "[i]n evaluating a motion to dismiss, [the court] may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp.*, 452 F.3d 256, 260 (3d Cir. 2006) (alteration in original) (citations omitted).

Here, Johnson includes copies of the arrest warrant to his responses in opposition to both motions to dismiss. *See* Doc. Nos. 14-2, 15-2. The court has considered the warrant as a public record in deciding the motion to dismiss. *See, e.g.*, *Williams v. Hammer*, Civ. A. No. 21-312, 2022 WL 1238966, at *2 n.3 (E.D. Pa. Apr. 26, 2022) (explaining that court could consider, in deciding motion to dismiss, affidavit of probable cause which was attached as exhibit to plaintiff's response to motion to dismiss (citing *Shelley v. Wilson*, 339 F. App'x 136, 137 (3d Cir. 2009) (per curiam))).

In addition, Johnson included copies of the same exhibits to both responses. For the sake of brevity, the court will only cite to the exhibits docketed with Johnson's response in opposition to the City of Reading and Angel Cabrera's motion to dismiss.

Attorney's Office charged him with criminal homicide and other offenses. *See id.* Ex. 2. At that time, defendants Angel Cabrera ("Cabrera") and Bruce Dietrich ("Dietrich"), were detectives employed by the City of Reading (the "City"). *See* Not. of Removal, Ex. A[2] at ECF pp. 13–14, 18, Doc. No. 1. Cabrera and Dietrich were involved in the investigation relating to the December 8, 1996 shooting deaths of Damon and Gregory Banks, including filing the police reports and interviewing witnesses. *See* Compl. at ¶¶ 26, 27, 38; *see also* Pl.'s Opp'n to City MTD, Ex. 3 (recording witness statements done by detectives Dietrich and Cabrera).

Mark C. Baldwin ("Baldwin") was the prosecutor assigned by the Berks County District Attorney's Office to manage the prosecution of Johnson. *See* Compl. at ¶ 95. The matter proceeded to a jury trial in the Berks County Court of Common Pleas, and on November 25, 1997, the jury convicted Johnson of two counts of first-degree murder. *See id.* at ¶¶ 13–15. The jury then sentenced Johnson to death. *See id.* Following this sentence, the Pennsylvania Department of Corrections committed Johnson to serve his sentence in solitary confinement until he was put to death. *See id.* at ¶ 17.

**B.    *Commonwealth v. Roderick Johnson*, Berks County Criminal Docket No. CP-06-CR-1537-1997 ("*Johnson II*")**

On January 21, 1997, a warrant was issued for Johnson's arrest in connection with the November 1, 1996 shooting death of José Martinez. *See* Pl.'s Opp'n to City MTD, Ex. 10. Days later, on January 27, Johnson was charged with, *inter alia*, the murder of José Martinez. *See id.* Ex. 11. As before, Cabrera and Dietrich were involved in the investigation. *See id.* Ex. 12. The Berks County District Attorney's Office assigned Baldwin to manage the prosecution of Johnson. *See* Compl. at ¶ 143.

---

[2] The complaint is found in the notice of removal, *see* Doc. No. 1, Ex. A at ECF pp. 9–103. Hereinafter, the court will cite directly to the complaint instead of referencing its location as part of the notice of removal.

In July 1998, a jury sitting in the Berks County Court of Common Pleas convicted Johnson of one count of first-degree murder. *See id.* at ¶ 106. The trial court imposed a sentence of life imprisonment to run consecutively with the death sentence in *Johnson I. See id.* at ¶ 107.

## C.   The Vacating of Johnson's Convictions and the Barring of Future Prosecutions on Double Jeopardy Grounds

In 2015, after multiple appeals and Post-Conviction Relief Act ("PCRA") petitions relating to *Johnson I*, the Berks County Court of Common Pleas granted Johnson's third PCRA petition upon the finding of a *Brady*[3] violation, vacated Johnson's conviction for the murders of Damon and Gregory Banks, and awarded him a new trial. *See id.* at ¶ 18; *see also Commonwealth v. Johnson*, 174 A.3d 1050, 1053–54 (Pa. 2017).[4] The Commonwealth appealed the PCRA court's decision and the Pennsylvania Supreme Court affirmed on December 19, 2017. *See Johnson*, 174 A.3d at 1059.[5]

In *Johnson II*, in addition to Johnson's post-conviction challenges in state court, he filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254 in June 2004. *See Johnson v. Folino, et al.*, Civ. A. No. 04-2835 (E.D. Pa.). On February 12, 2019, Judge Robreno granted as uncontested Johnson's habeas petition based on his *Brady* claim—based on the same evidence identified in *Johnson I*—and directed the Pennsylvania Attorney General to release or retry Johnson. *See* Feb. 12, 2019 Order, *Johnson v. Folino, et al.*, Civ. A. No. 04-2835 (E.D. Pa.), Doc. No. 283. Approximately two months later, the Berks County Court of Common Pleas vacated

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] The finding of a *Brady* violation related to "five police reports, each of which detailed distinct investigations into . . . criminal conduct" of a Commonwealth witness, George Robles, who had provided significant testimony relating to Johnson's guilt in *Johnson I & II. See Johnson*, 174 A.3d at 1052, 1054 (describing Robles' testimony in both cases).

[5] In 2004, Johnson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 relating to *Johnson I*, which was docketed in this court at Civil Action No. 03-2156 and assigned to the Honorable Eduardo C. Robreno. In light of Johnson obtaining relief in the state courts, Judge Robreno granted Johnson's motion to dismiss the petition on February 28, 2019. *See Johnson v. Beard, et al.*, Civ. A. No. 03-2156 (E.D. Pa.), Doc. Nos. 57, 58.

4

Johnson's conviction in *Johnson II* for this *Brady* violation and awarded him a new trial. *See* Compl. at ¶ 108.

At the Commonwealth's request, *Johnson I & II* were consolidated in the Berks County Court of Common Pleas. *See* Compl. at ¶¶ 19, 109. In late October 2020, the Berks County Court of Common Pleas granted Johnson's motion to dismiss *Johnson I & II* on double jeopardy grounds, effectively barring future prosecution in both cases. *See id.* at ¶¶ 20, 110.

### D.    The Present Civil Action

Following the dismissal of both criminal prosecutions against him, Johnson commenced the instant action on September 24, 2021, by filing a complaint in the Berks County Court of Common Pleas against the defendants: The City, Cabrera, Dietrich, the County of Berks ("Berks County"), Baldwin, and Edward D. Ratajack ("Ratajack"), who is the executor of the estate of former Reading police officer Joseph Stajkowski ("Stajkowski").[6] *See* Compl. at ¶¶ 5–11. In this action, Johnson seeks damages stemming from his wrongful convictions and asserts that his constitutional rights were violated due to evidence being suppressed relating to key fact witness George Robles ("Robles") in both *Johnson I* and *Johnson II* as well as other evidence. *See id.* at ¶¶ 23–32. Further, Johnson alleges that Cabrera, Dietrich, and Baldwin manipulated and coached material witnesses Robles, Luz Cintron, and Mylta Velazquez. *See id.* at ¶¶ 124–26.

In *Johnson I*, Robles' testimony linked Johnson to one of the guns used in the double homicide, essentially stating that Johnson "owned a .38 caliber handgun like the one found near the crime scene[] and . . . admitted to . . . taking the .38 caliber murder weapon from the murder scene, wiping it off with his shirt, and then throwing it on the side of the road about a quarter mile from the construction site where it was discovered by police." *Id.* at ¶ 24. After he was convicted,

---

[6] Stajkowski (now deceased) served as chief detective for Berks County. *See* Compl. at ¶ 11.

Johnson learned about the existence of a previously undisclosed letter, written by Robles to Cabrera. *See id.* at ¶¶ 13–15, 30, 33–34. In the letter, Robles expressed he would "do anything" to get out of jail. *Id.* at ¶ 35. Johnson raised a *Brady* claim relating to the letter on direct appeal to the Pennsylvania Supreme Court; however, the Court rejected this claim, "finding that 'the Commonwealth discharged its *Brady* disclosure responsibilities by providing [Johnson's] counsel with [a] police report that referenced the Robles letter.'" *Johnson*, 174 A.3d at 1053 (quoting *Commonwealth v. Johnson*, 727 A.2d 1089, 1095 (Pa. 1999)). Through the post-conviction proceedings, Johnson acquired five police reports which showed that Robles was suspected of criminal conduct and had self-serving motives to testify against Johnson. *See id.* (explaining that Johnson acquired the letters as part of the federal habeas proceedings relating to *Johnson II*). Had this evidence been turned over to Johnson prior to trial, it could have been used to impeach Robles' testimony. *See id.* at 1057.

In both *Johnson I* & *Johnson II*, Baldwin served as the lead prosecutor. *See* Compl. at ¶¶ 95, 143. During *Johnson I*, Johnson's attorney attempted to impeach Robles' credibility, arguing he was involved in criminal activities and was an informant for the Reading Police Department. *See id.* at ¶ 97. At sidebar with the trial judge, Baldwin objected to this impeachment inquiry and told the court that Robles was on "material witness bail," as opposed to "bail for any known or charged crimes," and noted that Robles had not been "convicted of or arrested on any crime." *Id.* at ¶¶ 97–98, 100. Johnson contends, however, that Baldwin was aware of evidence linking Robles to various criminal activities that Baldwin chose not to disclose to the defense prior to the two criminal trials. *See id.* at ¶ 102. Specifically, he alleges Baldwin "participated in the manipulation and coaching of . . . Robles in an investigative capacity prior to performing actions in a quasi-judicial role in connection with [*Johnson I*]." *Id.* at ¶¶ 25, 333.

Regarding *Johnson II*, during the pretrial conference in May 1998, Johnson's counsel requested that all impeachment evidence regarding Robles be disclosed. *See id.* at ¶ 146. Baldwin once again represented to the court that Robles had no convictions and that Baldwin had no information about any police reports naming Robles as a suspect. *See id.* at ¶¶ 147–48. After the pretrial conference, the trial judge entered an order stating that Baldwin had represented to the court that:

> George Robles has no criminal record, and further, that there are no reports in the possession of DANET or the Reading Bureau of Police which named George Robles as a suspect. Further, District Attorney Baldwin stated that George Robles is not a paid informant in this case or in any other cases, excluding the cases outside of Berks County or in the jurisdiction of the Federal authorities.

*Id.* at ¶ 150 (emphasis omitted). However, Johnson alleges that these representations were not true because after his conviction he learned of the Robles letter and police reports, as well as: (1) evidence confirming Robles was a member of the Nyte Life Clique (NLC) through which he engaged in criminal activities, (2) a statement from Robles that he smoked marijuana in the presence of Cabrera and Dietrich but was not arrested for such conduct, (3) a statement from Robles indicating Cabrera and Dietrich questioned him about criminal activities and that they complimented his intelligence, and (4) a statement from Stajkowski that Cabrera and Dietrich were involved in illegal narcotics trafficking. *See id.* at ¶ 133.

Johnson alleges that Baldwin did not act alone in failing to disclose the Robles evidence but rather Cabrera and Dietrich were also culpable participants. *See id.* at ¶¶ 124–32. Johnson also avers that Baldwin, Cabrera, and Dietrich manipulated and coached material witnesses Robles, Luz Cintron, and Mylta Velazquez in *Johnson II*. *See id.* at ¶¶ 124–26.

Based on the above allegations, Johnson asserts 13 state and federal causes of action arising from his wrongful convictions. *See id*. at ¶¶ 165–422. Those causes of action are: (1) Fourteenth

Amendment municipal liability claims against the City and Berks County (Counts I and II); (2) a Fourteenth Amendment supervisory liability claim against Ratajack (Count III); (3)  Fourteenth Amendment individual liability claims against Cabrera, Dietrich, and Baldwin (Counts IV–VI); (4) a Fourteenth Amendment conspiracy claim against Cabrera, Dietrich, and Baldwin (Count VII); (5) a Fourteenth Amendment failure to intervene claim against Ratajack (Count VIII); (6) municipal liability claims for violations of the Pennsylvania Constitution against the City and Berks County (Counts IX and X); (7) individual liability claims for violations of the Pennsylvania Constitution against Cabrera, Dietrich, Baldwin, and Ratajack (Count XI); (8) a state-law abuse of process claim against Cabrera and Dietrich (Count XII); and (9) a state-law civil conspiracy claim against Cabrera and Dietrich (Count XIII).

Johnson initially filed this action in the Berks County Court of Common Pleas, but the City and Cabrera removed the action to this court on November 4, 2021. *See* Doc. No. 1. Shortly thereafter, on November 10, 2021, the City and Cabrera filed a motion to dismiss. *See* Doc. No. 5. On the same day, Baldwin filed a separate motion to dismiss. *See* Doc. No. 8. Berks County and Ratajack filed an answer and affirmative defenses to the complaint on November 11, 2021. *See* Doc. No. 9. On November 24, 2021, Johnson filed responses in opposition to both motions to dismiss. *See* Doc. Nos. 14, 15. On December 1, 2021, the City and Cabrera filed a reply brief in support of their motion to dismiss, *see* Doc. No. 16, as did Baldwin with his motion. *See* Doc. No. 19. Dietrich filed a motion to join the City and Cabrera's motion to dismiss on December 2, 2021. *See* Doc. No. 21. Johnson filed a response in opposition to Dietrich's motion on December 13, 2021. *See* Doc. No. 22.

On December 16, 2021, the court held an initial pretrial conference and heard oral argument on the motions to dismiss.[7] *See* Doc. Nos. 23, 26. Following a stay of these proceedings which does not now preclude the court ruling on these motions, the motions to dismiss are ripe for disposition.

## II.    DISCUSSION

### A.    <u>Standard of Review – Motions to Dismiss Under Rule 12(b)(6)</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Rule 8(a)(2) of the Federal Rules of Civil Procedure establishes the basic standard for legal sufficiency of allegations in a complaint. *Stevenson v. Carroll*, 495 F.3d 62, 65 (3d Cir. 2007). Under this rule, a legally sufficient complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[7] On August 2, 2022, Johnson filed a suggestion of death upon the record as to Dietrich. *See* Doc. No. 37. The following day, Johnson filed a motion to substitute Dietrich, which is still pending before the court as the parties seek an appropriate substitute. *See* Doc. No. 39. This motion is not addressed as part of this opinion.

Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555); *see also In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021).

## B.  <u>Analysis</u>

Together, the moving defendants' motions to dismiss ask the court to dismiss the following claims from the complaint: (1) the Fourteenth Amendment municipal liability claim against the City; (2) the Fourteenth Amendment individual liability claims against Cabrera, Dietrich, and Baldwin; (3) the Fourteenth Amendment conspiracy claim against Cabrera, Dietrich, and Baldwin; (4) the municipal liability claim for violations of the Pennsylvania Constitution against the City; (5) the individual liability claims for violations of the Pennsylvania Constitution against Cabrera, Dietrich, and Baldwin; (6) the state-law abuse of process claim against Cabrera and Dietrich; and (7) the state-law civil conspiracy claim against Cabrera and Dietrich. Additionally, the City Defendants ask the court to dismiss the claims for punitive damages. The court will address each set of defendants' motions below.[8]

---

[8] As mentioned above, Dietrich filed a motion in which he seeks to join the City and Cabrera's motion to dismiss because Dietrich "and the Reading Defendants are similarly situated in this matter regarding Plaintiff's allegations of violations of his rights pursuant to § 1983, as well as Plaintiff's state law claims." Def. (Former) Detective Bruce Dietrich's Joinder in Defs.' City of Reading and (Former) Detective Angel Cabrera's Mot. to Dismiss Pl.'s Compl. at 1, Doc. No. 21. Although Dietrich's motion also includes a request that the court dismiss Johnson's Fourteenth Amendment individual liability claim against him, *see id.* at 1 n.1, the court will be addressing an identical argument regarding the same cause of action asserted against Cabrera. Therefore, the court will grant the motion for joinder and join him to the City and Cabrera's motion to dismiss because (1) Johnson has not opposed the motion for joinder; (2) Dietrich timely filed the motion; (3) the court agrees that Dietrich and Cabrera are similarly situated, as shown by the allegations and claims in the complaint; (4) Dietrich does not raise any new arguments in the motion; and (5) joinder

### 1.     The City, Cabrera, and Dietrich's Motion to Dismiss

The City, Cabrera, and Dietrich (collectively, the "City Defendants") raise five arguments in their motion to dismiss. *See* Br. in Supp. of Defs. City of Reading and (Retired) Reading Detective Angel Cabrera's Mot. to Dismiss Pl.'s Compl. ("City Defs.' MTD") at 8–23, Doc. No. 5.[9] First, they argue issue preclusion bars Johnson's Fourteenth Amendment claims against Cabrera and Dietrich. *See id.* at 8–17. Second, they assert that if the court dismisses these claims against Cabrera and Dietrich, the municipal liability claim against the City fails because there is no underlying constitutional violation by an agent of the City. *See id.* at 17–18. Third, the City Defendants contend Johnson has not sufficiently pleaded the conspiracy claims against Cabrera and Dietrich. *See id.* at 18–20. Fourth, they argue that the claims for violations of the Pennsylvania Constitution are duplicative of Johnson's Fourteenth Amendment claims and that the Pennsylvania Constitution does not create a private cause of action to recover money damages. *See id.* at 20–21. Fifth, they contend that the state-law abuse of process claim fails because the statute of limitations has run. *See id.* at 21–22. Finally, the City Defendants maintain that should the claims survive the motion to dismiss, the court should strike the demand for punitive damages insofar as Johnson seeks punitive damages against them under section 1983 and against the City under state law. *See id.* at 22–23.[10]

As discussed below, the court agrees in part with the City Defendants and will grant their motion to dismiss with respect to Johnson's claims for violations of the Pennsylvania Constitution,

---

would serve judicial economy. *See, e.g.*, *People v. Roberts*, 70 V.I. 168, 173–74 (V.I. 2019) (noting that joinder improves judicial efficiency, especially when joining party raises no new arguments and requests same form of relief).
[9] The City and Cabrera filed the motion, brief, exhibits, and proposed order as one document. *See* Doc. No. 5. Their brief begins at ECF p. 9 of Doc. No. 5.
[10] As noted later in this opinion, the City Defendants did not address any other claim for punitive damages against Cabrera and Dietrich outside of the section 1983 claim. *See* City Defs.' MTD at 22–23.

his state-law abuse of process claim, and his claims for punitive damages against the City. The court will deny the remainder of the motion at this early stage of the litigation.

         a.      <u>Fourteenth Amendment Claim Against Cabrera and Dietrich</u>

The City Defendants first seek to dismiss Johnson's claims that Cabrera and Dietrich's actions violated the Fourteenth Amendment. *See* City Defs.' MTD at 8–17. Johnson alleges that during his two criminal trials, Cabrera and Dietrich, *inter alia*, (1) deliberately withheld exculpatory and impeachment evidence within their knowledge and possession from him; (2) permitted the testimony of witnesses known to be perjured to be used in the trials; (3) permitted evidence known to be fabricated to be used in his trials; and (4) deliberately chose not to charge potential witnesses with criminal behavior for the purpose of creating a false impression of the witnesses' lawfulness in order to convict him. Compl. at ¶¶ 277–329. Johnson asserts that those acts deprived him of his Fourteenth Amendment due process rights.[11] *See id.* at ¶¶ 295–97, 322–24.

The City Defendants contend that another court already reached a final decision on the merits of these Fourteenth Amendment claims and thus these claims must fail due to the doctrine

---

[11] The Fourteenth Amendment's Due Process Clause prohibits states from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. If a criminal defendant "is convicted on the basis of fabricated evidence," they have been denied due process of law and "can seek redress for violation of this right through a civil action under 42 U.S.C. § 1983." *Halsey v. Pfeiffer*, 750 F.3d 273, 289–90 (3d Cir. 2014). Further, "the Constitution forbids prosecutors from knowingly using perjured testimony to secure a criminal conviction." *Id.* at 295–96 (citation omitted). "Fabricated evidence is an affront to due process of law, and state actors seeking to frame citizens undermine fundamental fairness and are responsible for 'corruption of the truth-seeking function of the trial process.'" *Black v. Montgomery County*, 835 F.3d 358, 370 (3d Cir. 2016) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). Section 1983 is intended "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

    In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the Fourteenth Amendment's Due Process Clause requires prosecutors to disclose materially exculpatory evidence in the government's possession to the defense. "A *Brady* violation occurs if: (1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (quoting *Wilson v. Beard*, 589 F.3d 651, 659 (3d Cir. 2009)).

of issue preclusion. *See* City Defs.' MTD at 10. This doctrine "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies." *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999) (citing *Schroeder v. Acceleration Life Ins. Co.,* 972 F.2d 41, 45 (3d Cir. 1992)). For a party to apply the doctrine and thus bar a potential claim:

> 1) the issue decided in the prior adjudication must be identical with the one presented in the later action;
>
> 2) there must have been a final judgment on the merits;
>
> 3) the party against whom [issue preclusion] is asserted must have been a party or in privity with the party to the prior adjudication; and
>
> 4) the party against whom [issue preclusion] is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication.

*Id.* at 199. Here, the City Defendants cannot establish all four elements to invoke issue preclusion. *See id.* The first element requires this court to look at the claims brought in prior actions to determine whether the issues before the other courts were identical to that before this court and that the issues were fully litigated in prior proceedings. *See id.* at 200. But in none of the four prior proceedings cited by the City Defendants, *see* Doc. Nos. 5-1, 5-2, 5-3, 5-4, does a prior court determination satisfy these elements.

   To support their argument that the court should not address Johnson's Fourteenth Amendment claims against Cabrera and Dietrich on the merits, the City Defendants point to the four judicial opinions which together vacate Johnson's convictions and release him from prison without constraint. *See* City Defs.' MTD at 11–16. The City Defendants argue that these opinions constitute a final determination that Cabrera and Dietrich did not violate Johnson's constitutional rights. *See id*. at 16. However, the City Defendants incorrectly conflate the various courts' determinations that District Attorney Baldwin violated Johnson's Fourteenth Amendment rights

with a determination that Cabrera and Dietrich did not. *See id.* at 12, 13. After reviewing each of these prior decisions, none address the identical issue presented here.

    i.      *Berks County Court of Common Pleas' July 6, 2015 Opinion and Order in Johnson I*

On July 6, 2015, the Berks County Court of Common Pleas entered an opinion and order addressing Johnson's PCRA petition in which he raised a *Brady* violation claim. *See* Doc. No. 5-2 at ECF p. 3. The court determined that there was a *Brady* violation and granted Johnson a new trial. *See id.* at ECF p. 7. In reaching this decision, the court made several determinations regarding the withheld evidence during Johnson's cases and the materiality therein, but the court never specifically addressed whether Cabrera or Dietrich violated Johnson's constitutional rights. *See id.* at ECF pp. 4–6.

In analyzing the Commonwealth's failure to turn over the Robles letter and other potentially exculpatory evidence, the court addressed an exchange at trial between the court, the prosecution, and defense counsel. *See id.* at ECF p. 5 n.4. At trial, Johnson's attorney attempted to impeach Robles' credibility when Baldwin objected. *See id.* At sidebar, Johnson's counsel explained to the trial court that his intention was to argue that Robles was involved in criminal activities and had ulterior motives to testify against Johnson. *See id.* When the trial court asked whether Johnson's counsel had any hard evidence to substantiate these claims, he was unable to present any because none had been disclosed. *See id.* But the government did possess such evidence and failed to disclose it. *See id.* at ECF p. 6. Ultimately, the Berks County Court of Common Pleas held that the non-disclosure of the evidence constituted a *Brady* violation but went no further with the analysis.[12] *See id.* At bottom, there is nothing in this decision that would

---

[12] The court did make a specific factual finding that "neither . . . Cabrera nor . . . Dietrich were engaged in corrupt or improper dealings with . . . Robles," but that does not identically address whether Cabrera or Dietrich violated Johnson's rights under *Brady*. Doc. No. 5-2 at ECF p. 7.

preclude this court from addressing Johnson's Fourteenth Amendment claim against Cabrera and Dietrich. *See id.*

   ii.  *2017 Pennsylvania Supreme Court Decision in Johnson I*

  In December 2017, the Pennsylvania Supreme Court addressed the Commonwealth's appeal from the Berks County Court of Common Pleas' PCRA decision awarding Johnson a new trial. *See Commonwealth v. Johnson*, 174 A.3d 1050, 1051 (2017).[13] In reviewing Johnson's case, the Court focused on whether the withheld evidence constituted *Brady* material and thus whether Johnson's constitutional rights had been violated. *See id.* at 1053, 1055–56.

  Addressing this issue, the Court reviewed Johnson's 2005 federal habeas proceedings relating to *Johnson II*, where Judge Robreno ordered the Commonwealth to provide all information relating to Robles' criminal conduct to Johnson's attorneys. *See id.* at 1054. In response to this order, the Commonwealth turned over the five police reports detailing distinct investigations into Robles' suspected activity in various crimes. *See id.* As to these reports, the Court thoroughly reviewed their contents. *See id.* After this review, the Court analyzed the materiality of the reports and agreed with the PCRA court that they were material under *Brady*. *See id.* at 1055–57.

  The Court noted that the withheld evidence, *inter alia*, suggested a mutually beneficial relationship between law enforcement and Robles. *See id.* at 1057–58 ("The withheld police reports also would have permitted defense counsel to establish for the jury Robles' motive to lie to further his ongoing collaboration with the Reading Police Department. Evidence that Robles benefited from his relationship with the police by being able to engage in drug sales without fear of repercussions would have suggested that Robles was motivated to provide testimony helpful to the prosecution in this case."). The Court ultimately agreed with the PCRA court stating that had

---

[13] This opinion is attached to the City Defendants' motion to dismiss as Exhibit C. *See* Doc. No. 5-3.

defense counsel been able to use the withheld reports to explore Robles' motive for testifying, there was a reasonable probability that Johnson's trial would have gone differently. *See id.* Despite reaching this conclusion, the Court neither identified any individual as being specifically responsible for the *Brady* violation, nor determined that Cabrera or Dietrich were not responsible for the failure to turn over the reports. *See id.* at 1058. As such, this prior adjudication does not determine whether Cabrera and Dietrich were responsible for violating Johnson's constitutional rights—the identical issue presented in this case—and accordingly does not justify the court applying issue preclusion.

    iii.    *The February 12, 2019 Order in Johnson v. Folino, Civ. A. No. 04-2835 (E.D. Pa.)*

On February 12, 2019, Judge Robreno filed a two-page order in which he recognized that Johnson's conviction had been obtained through unconstitutional means.[14] *See* Feb. 12, 2019 Order at 1, *Johnson v. Folino*, Civ. A. No. 04-2835 (E.D. Pa.), Doc. No. 283.[15] But Judge Robreno went no further before granting Johnson's petition for a writ of habeas corpus and ordering the Pennsylvania Attorney General to release or retry Johnson. *See id.* The order did not determine or address whether Cabrera or Dietrich violated Johnson's constitutional rights. *See id.* As such, this order does not substantively address the issue presented and thus provides no support to the City Defendants seeking to preclude this court from addressing the issue.

    iv.    *Berks County Court of Common Pleas' October 29, 2020 Opinion*

On October 29, 2020, the Berks County Court of Common Pleas issued an opinion addressing whether the Commonwealth was prohibited from retrying Johnson on double jeopardy grounds. *See* Doc. No. 5-1 at ECF p. 2. The court specifically states, "this court is not writing to

---

[14] Judge Robreno noted that just the conviction, not the indictment, was declared unconstitutional, thereby leaving open the possibility of retrial, pending a determination that a retrial would violate Johnson's double jeopardy rights. *See* Feb. 12, 2019 Order at 1 n.1, *Johnson v. Folino*, Civ. A. No. 04-2835 (E.D. Pa.).
[15] This order is attached to the City Defendants' motion to dismiss as exhibit D. *See* Doc. No. 5-4.

substantiate (address) the issue of *Brady*. That issue has very clearly been determined by the higher courts. *Brady* was violated. However, the details of this violation are set forth to illustrate the intentional nature of . . . Baldwin's behavior in this matter." *Id.* at ECF p. 3. Thus, this opinion cannot, and should not, be used to satisfy the prior adjudication requirement to invoke issue preclusion.

Even if the court claimed to address the merits of the constitutional violations, nowhere in the opinion does the court determine that Cabrera and Dietrich did not violate Johnson's constitutional rights. *See generally id.* at ECF pp. 3–32. Instead, the court recites the underlying facts, focused primarily on prosecutorial misconduct but also noting mistakes made by others. *See id.* at ECF p. 27 ("[Prosecutorial] mistakes were compounded by the fact that the detective who received the black baseball cap with the bullet hole that the victim had been wearing apparently forgot that information as the investigation ensued."). Further, the court reviewed testimony given by Cabrera regarding discussions that he had with Baldwin regarding Robles, but does not make any legal findings regarding Cabrera's culpability with respect to the Johnson prosecution and non-disclosure of evidence. *See id.* at ECF pp. 28–30.

Overall, the court's review of each opinion referenced by the City Defendants shows that they have failed to satisfy all four elements necessary for issue preclusion. *See Witkowski*, 173 F.3d at 199 (stating elements). Specifically, these defendants have not pointed to a prior decision that addressed the issue of whether Cabrera and Dietrich were responsible for the non-disclosure of the exculpatory evidence. *See id.* Accordingly, the court will deny the City Defendants' motion to dismiss Johnson's Fourteenth Amendment claims against Cabrera and Dietrich on the ground of issue preclusion.

b.     Fourteenth Amendment Municipal Liability Claim Against the City

The City Defendants' second argument in their motion to dismiss is that the court should

dismiss Johnson's Fourteenth Amendment municipal liability claim if the court dismisses the

individual liability claims against Cabrera and Dietrich.[16] This is because a municipality:

> may not be sued under § 1983 for an injury inflicted solely by its employees or
> agents. Instead, it is when execution of a government's policy or custom, whether
> made by its lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as an entity is
> responsible under § 1983.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

As set forth above, the court is not dismissing the individual liability claims against the

City's agents, Cabrera and Dietrich. Since the sole argument presented in the motion was

conditioned on the dismissal of claims against Cabrera and Dietrich, the court denies the motion

to dismiss Johnson's Fourteenth Amendment municipal liability claim against the City.

c.     Section 1983 and State-Law Conspiracy Claims

Johnson sets forth two conspiracy claims against Cabrera and Dietrich: a Section 1983

claim and a Pennsylvania common law claim. *See* Compl. at ¶¶ 342–70; 416–22. In his section

1983 claim, Johnson asserts that Cabrera, Dietrich, and Baldwin conspired, *inter alia*, to

---

[16] As part of Johnson's municipal liability claim against the City, he asserts that it (1) deliberately withheld exculpatory and impeachment evidence within the knowledge and possession of its police agency from Johnson; (2) permitted the testimony of witnesses known to be perjured to be used in Johnson's criminal proceedings; (3) permitted evidence known to be fabricated to be used in Johnson's criminal proceedings; (4) deliberately chose not to charge potential witnesses with criminal behavior for the purpose of creating a false impression of the witnesses' lawfulness in order to convict Johnson; (5) failed to train employees to ensure that evidence held by a police agency, whether directly exculpatory or impeachment evidence, is timely disclosed to prosecutors; (6) failed to train employee law enforcement officers not to suborn perjury, fabricate, and suppress evidence; and (7) failed to supervise and discipline employees who deliberately suppressed or withheld exculpatory and impeachment evidence from the prosecutors, suborned perjury, and fabricated evidence. *See* Compl. at ¶¶ 168–218.

unlawfully withhold evidence, coach material witnesses, and withhold criminal charges of witnesses so that the case against him would be stronger, in violation of his constitutional rights. *See id.* at ¶¶ 352–70. For his Pennsylvania-law conspiracy claim, Johnson alleges that Cabrera and Dietrich conspired to, *inter alia*, subject him to "prolonged incarceration, loss of liberty, and death[.]" *Id.* at ¶¶ 417–19.

Concerning the section 1983 conspiracy claim, to survive a motion to dismiss, the complaint must plausibly plead (1) a conspiracy involving state action exists and (2) a party has deprived another of civil rights in furtherance of the conspiracy. *See Rosembert v. Borough of E. Landsdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)). Regarding a Pennsylvania common law claim for civil conspiracy, Johnson must plausibly plead facts that show (1) "two or more persons combined or agreed with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means," (2) those persons acted with "malice, i. e., [sic] an intent to injure" without justification, (3) those persons performed an "overt act" "in pursuance of the common purpose or design," and (4) actual resulting damages. *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979) (citations omitted). In reviewing whether Johnson has stated plausible conspiracy claims for the purpose of a motion to dismiss, the court accepts all factual allegations in the complaint as true, but the court need not accept unsupported conclusions or unwarranted inferences. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). In the complaint, Johnson makes several factual allegations, which together show a plausible case for the section 1983 conspiracy and the common law conspiracy claims.

Johnson pleads that Cabrera and Dietrich were closely involved in the criminal investigations into the murders for which Johnson was imprisoned. *See* Compl. at ¶¶ 26–29, 125–

129, 148. He alleges that Cabrera, Dietrich, and Baldwin worked closely together for the purpose of convicting Johnson and that they were in possession of what would become the *Brady* materials that were wrongfully withheld from the defense. *See id.* at ¶¶ 113–33. Johnson argues that Cabrera and Dietrich knew the evidence presented at trial was incomplete, fabricated, and perjured, for the purpose of obtaining a conviction, thereby violating his constitutional rights. *See id.* at ¶¶ 33–92. 113–33, 127–129.

Specifically, part of the investigation into Johnson involved Cabrera and Dietrich interviewing Robles, Cintron, and Velazquez a number of times. *See id.* at ¶¶ 113–30. Johnson asserts that Cabrera and Dietrich pressured or coaxed the witnesses into altering their testimony. *See id.* After numerous interviews, the witnesses changed their initial statements from ones that did not implicate Johnson to directly tying Johnson to the murders. *See id*. Johnson argues that this shows the investigators conspired to manipulate and coach the witnesses. *See id.* at ¶¶ 118–25.

Johnson also states that Cabrera and Dietrich had personal relationships with Robles and knowledge of his criminal activities. *See* Compl. at ¶ 133. The five police reports and the handwritten note from Robles to Cabrera show a history between Robles and the police department. *See id.* at 33–92. Johnson specifically alleges that Cabrera and Dietrich observed Robles smoking marijuana. *See id.* He also states that Cabrera chose to return a safe to Robles even though it had possibly been used to facilitate the sale of drugs. *See id.* at ¶¶ 52–56. The lack of any charges or official action could be read to further evidence a mutually beneficial relationship.

The reason for the non-disclosure of the evidence has not yet been established. However, Johnson alleges sufficient facts for the court to find that the conspiracy claims under section 1983 and Pennsylvania law plausible. Accordingly, the court will deny the part of the motion to dismiss addressing Johnson's conspiracy claims and allow discovery to proceed on these claims.

d.     Violations of the Pennsylvania Constitution

Johnson asserts claims against the City Defendants for damages arising from Article 1, Sections 1, 8, and 26 of the Pennsylvania Constitution. *See id.* at ¶¶ 379–85, 393–99. Specifically, Johnson alleges the City operated under customs, practices, and policies which deprived him of the right to be free from wrongful conviction achieved through state actors intentionally undertaking conduct designed to prejudice him to the point of being denied a fair trial. *See id.* at ¶¶ 379–85. Johnson also seeks damages against Cabrera and Dietrich, claiming that they deliberately acted to deprive him of his substantive rights and a protectable liberty interest conferred by the Pennsylvania Constitution. *See id.* at ¶¶ 393–99.

Although Johnson asserts these claims seeking damages for violations of the Pennsylvania Constitution, he has not asserted plausible claims for relief because Pennsylvania does not recognize a private right of action for money damages for a violation of the Pennsylvania Constitution.[17] *See Moss v. Pennsylvania*, 838 F. App'x 702, 708 (3d Cir. 2020) (per curiam) ("Moreover, to the extent that Moss alleged violations of the Pennsylvania Constitution, he failed to state a claim, as Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution." (citing *Jones v. City of Phila.*, 890

---

[17] Johnson points to *Montanye v. Wissahickon School District*, 327 F. Supp. 2d 510 (E.D. Pa. 2004) and other cases, to argue that because there is no binding decision by the Third Circuit Court of Appeals or Pennsylvania Supreme Court on whether there is a private right for damages under the Pennsylvania Constitution, his claims should survive the motion to dismiss. *See* Pl.'s Opp'n to City MTD at 37 n.29. Although Johnson is technically correct, the court is guided by the numerous unpublished Third Circuit decisions finding no such action for damages exist. *See Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (per curiam) ("To the extent that Miles intended to allege violations of the Pennsylvania Constitution, he failed to state a claim, as Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008))); *Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."). Further, courts have held that other—non-monetary—remedies are available under the Pennsylvania Constitution. *See Pocono Mountain Charter Sch.*, 442 F. App'x at 688 (noting that individual plaintiffs may bring actions for violations of the Pennsylvania Constitution seeking declaratory or injunctive relief).

A.2d 1188, 1208 (Pa. Cmwlth. 2006))); *Johnakin v. Drosdak*, Civ. A. No. 22-2575, 2022 WL 4542092, at *5 (E.D. Pa. Sept. 28, 2022) (dismissing claim for damages for violation of Pennsylvania Constitution with prejudice "as there is no private right of action for damages under the Pennsylvania Constitution" (citations omitted)). Accordingly, the court will grant the part of the City Defendants' motion to dismiss pertaining to Johnson's claims for violations of the Pennsylvania Constitution and will dismiss those claims with prejudice.

e.     Abuse of Process

Johnson asserts a Pennsylvania-law abuse of process claim against Cabrera and Dietrich on the basis that they maliciously used the criminal process for the improper purpose of targeting him for prosecution with the intention of eliminating Johnson as an illicit drug trafficking competitor. *See* Compl. at ¶¶ 401–15. The City Defendants argue that the court should dismiss this cause of action because the statute of limitations has run.[18] City Defs.' MTD at 21–22. The court agrees.

Pennsylvania's statute of limitations requires an abuse of process claim to be brought within two years of its accrual. 42 Pa. C.S. § 5524. An abuse of process claim accrues "on the date the alleged abuse occurred." *P.J.A. v. H.C.N.*, 156 A.3d 284, 289 (Pa. Super. 2017); *see also Rose v. Bartle*, 871 F.2d 331, 350 (3d Cir. 1989) (holding that section 1983 abuse of process claim accrues on date of abuse). "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Langman v. Keystone Nazareth Bank & Trust Co.*, 502 F. App'x 220,

---

[18] The statute of limitations is an affirmative defense, usually not considered during a motion to dismiss. Nevertheless, the court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."); *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam) (explaining that even though "the statute of limitations is an affirmative defense [under Rule 8(c) of the Federal Rules of Civil Procedure], a district court may, sua sponte, dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required"). Because this court finds that the statute of limitations defense is obvious from the face of the complaint, the court will address the issue below.

224 (3d Cir. 2012) (quoting *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Unlike federal civil-rights claims, which may be subject to equitable tolling, state common-law claims run from the date of which the alleged abuse occurred and the defendant knew about it.[19] *Rose*, 871 F.2d at 350.

Here, Johnson commenced the instant action on September 24, 2021. The alleged abuse of process stems from the failure to disclose potentially exculpatory evidence to the defense during the course of Johnson's two criminal trials, in 1997 and 1998 respectively. *See id.* at ¶¶ 400–15. Even under the most liberal interpretation of Pennsylvania's discovery rule, Johnson's abuse of process claim accrued when he became aware that the allegedly withheld evidence constituted a *Brady* violation, which was no later than 2017. *See* Compl. at ¶¶ 103, 153. Johnson argues that the claim "did not accrue until December 1, 2020 when the plaintiff was discharged without jurisdictional restraint." Pl.'s Opp'n to City MTD at 40. However, Johnson does not point to any caselaw to support this argument nor does the court find any Pennsylvania precedent which applies equitable tolling to this action mirroring that of federal claims under section 1983 as defined under *Heck v. Humphrey*, 512 U.S. 477 (1996), and its progeny. At bottom, Johnson initiated this suit well more than two years after he knew of the alleged abuse of process. Accordingly, the court will grant the part of the City Defendants' motion to dismiss relating to the Pennsylvania common law abuse of process claim and will dismiss it with prejudice.

---

[19] "At common law, a civil damage suit for abuse of process is not necessarily barred merely because the criminal (or other) proceeding involving the allegedly abused process has not terminated favorably to the damage suit plaintiff." *Brown v. Edwards*, 721 F.2d 1442, 1448 n.8 (5th Cir. 1984). Moreover, an abuse of process claim is not, *per se*, a collateral attack on a criminal conviction through the vehicle of a civil suit. *Heck v. Humphrey*¸ 512 U.S. 477, 485 (1996).

f.    Punitive damages

Finally, the City Defendants assert that the court should strike any claim for punitive damages. *See* City Defs.' MTD at 22–23.

i.    *Punitive Damages against the City*

The City Defendants first argue that the City, as a municipality, is immune from punitive damages under section 1983 and state law.[20] *See id.* Johnson does not respond to this argument.

A plaintiff may not recover punitive damages against a municipal government entity under federal law, including section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 456 (3d Cir. 2001) (explaining that "[s]ince *City of Newport*, the principle that municipalities are immune to punitive damages under § 1983 has been extended to other government entities"); *Wood v. Rendell*, Civ. A. No. 94-1489, 1995 WL 676418, at *6 (E.D. Pa. Nov. 3, 1995) ("Punitive damages are not available against a municipality in § 1981 claims."). Similarly, a plaintiff may not recover punitive damages against governmental entities unless expressly permitted under Pennsylvania law. *See Feingold v. SEPTA*, 517 A.2d 1270, 1277 (1986) (agreeing with concerns set forth in *City of Newport* and concluding "that it would be inappropriate to assess punitive damages against SEPTA given its status as a Commonwealth agency."); *Martinez v. City of Reading Prop. Maint. Div.*, Civ. A. No. 16-1290, 2017 WL 4347667, at *21 (E.D. Pa. Sept. 29, 2017) (striking claims for punitive damages because defendant was a government entity). Based on the above, Johnson may not recover punitive damages against the

---

[20] Johnson only specifically demands punitive damages on seven of the thirteen counts, none against the City. *See* Compl. at ¶¶ 218–422. Even if this court were to interpret the generic demand for "further relief as this Court may deem appropriate" as inclusive of punitive damages against the City, the claim is dismissed for the reasons so stated. *See id.* at ¶¶ 218, 385.

City as a matter of law. Therefore, the court will grant this part of the City Defendants' motion and strike all punitive damage claims against the City with prejudice.

## ii.  *Punitive Damages against Cabrera and Dietrich*

Second, the City Defendants argue that the claims for punitive damages against Cabrera and Dietrich under section 1983 fail because the complaint fails to plead sufficient facts to establish reckless or callous indifference towards Johnson's rights.[21] City Defs.' MTD at 23. For a claim under section 1983 to qualify for punitive damages, "the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989).

As discussed above, Johnson pled a plausible civil conspiracy claim that Cabrera and Dietrich acted with "malice, i. e., [sic] an intent to injure [Johnson.]" *Thompson Coal Co.*, 412 A.2d at 472. The factual allegations, which at this stage are accepted as true, showed a plausible case that Cabrera and Dietrich conspired to withhold exculpatory material from Johnson. *See Savarese*, 883 F.2d at 1204. At this stage, Johnson's claims must only be plausible, not persuasive, *see Twombly*, 550 U.S. at 570, and he has alleged a plausible claim that Cabrera and Dietrich's conduct displayed a reckless indifference toward Johnson's constitutional rights. *See id*.; *see also Cichonke v. Bristol Twp.*, Civ. A. No. 14-4243, 2015 WL 1345439, at *21 (E.D. Pa. Mar. 25, 2015)

---

[21] The City Defendants appear to only argue that the claims for punitive damages against Cabrera and Dietrich under section 1983 must be dismissed. *See* City Defs.' MTD at 22–23 (presenting arguments to dismiss the claims for punitive damages only with respect to the section 1983 claim). In his response in opposition to the City Defendants' motion to dismiss, Johnson noted that "Defendant Angel Cabrera does not move the Court to dismiss plaintiff's claim for punitive damages set forth in Counts VII, XI, XII, and XIII of the Plaintiff's Complaint." Pl.'s Opp'n to City MTD at 40. As such, Johnson did not address the requests for punitive damages associated with his other claims. *See id.* at 40–42. In the City Defendants' reply brief, they did not address this topic. *See generally* Defs.' City of Reading and (Retired) Reading Detective Angel Cabrera's Reply Br. in Supp. of their Mot. to Dismiss Pl.'s Compl. at 1–4, Doc. No. 16. Thus, the court will only address Johnson's request for punitive damages on his section 1983 claims and not his punitive damages claims under his other causes of action.

(declining to dismiss claims for punitive damages on motion to dismiss when factual allegations support reckless or callous disregard for plaintiff's constitutional rights). Accordingly, the court declines to dismiss the claims for punitive damages under section 1983 against Cabrera and Dietrich.

## 2.      Baldwin's Motion to Dismiss

Johnson brings three claims against Baldwin: (1) a section 1983 Fourteenth Amendment individual liability claim; (2) a section 1983 Fourteenth Amendment conspiracy claim; and (3) a claim under the Pennsylvania Constitution. *See* Compl. at ¶¶ 330–70, 393–99. In his motion to dismiss, Baldwin argues he is entitled to absolute immunity from the two federal claims and with respect to the third claim, that the Pennsylvania Constitution does not afford Johnson a right to recover money damages. For the reasons discussed below, the court agrees with Baldwin and grants his motion to dismiss in full.

### a.      Fourteenth Amendment: Individual Liability

Johnson alleges Baldwin violated his Fourteenth Amendment rights to procedural due process, which he claims "guarantees that a criminal defendant be free from post-conviction incarceration achieved through state actors deliberately withholding or concealment of exculpatory and/or impeachment information." *Id.* at ¶ 339. Johnson asserts that Baldwin's actions while prosecuting *Johnson I* and *Johnson II* deprived him of his due process rights. *See id.* However, Baldwin is entitled to prosecutorial immunity and the court must dismiss this due process claim.

"Prosecutor[s] enjoy[] absolute immunity from § 1983 suits for damages when [they] act[] within the scope of [their] prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). In a motion to dismiss, "a defendant must show that the conduct triggering absolute immunity

'clearly appear[s] on the face of the complaint.'" *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020) (alteration in original) (quoting *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989)).

"[A] person is not immune from suit for every wrong [they] commit[] just because [they] happen[] to be employed as a prosecutor[.]" *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). As such, courts addressing the applicability of prosecutorial immunity focus on "the nature of the function performed, not the identity of the actor who performed it[.]" *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001). This analysis has two steps. *See Schneyder*, 653 F.3d at 332 ("Analysis of prosecutorial immunity questions . . . has two basic steps[.]").

In the first step, courts look at the alleged facts and determine the foundation of the plaintiff's causes of action. *See id.* ("The first stage 'focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions.'" (quoting *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008))). Second, courts determine "what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* There is much overlap in these two steps. *Id.* "[Absolute prosecutorial] immunity attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd*, 538 F.3d at 208 (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994)). The "ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given *claim*." *Fogle*, 957 F.3d at 161 (3d Cir. 2020).

Here, Johnson's allegations fail to show that Baldwin was acting outside of his prosecutorial capacity when he committed the acts constituting the alleged Fourteenth Amendment violations. Johnson alleges that Baldwin violated the Fourteenth Amendment by (1) manipulating and coaching material witnesses in an investigative capacity prior to performing actions in a quasi-judicial role in *Johnson I & II* and (2) defying the order or directive of the court to provide truthful

information regarding Robles' criminal contact with law enforcement in *Johnson I & II. See* Compl. at ¶¶ 333–38. In so doing, Baldwin allegedly caused Johnson "to suffer a deprivation of the right to procedural due process protected by the Fourteenth Amendment[,] . . . which guarantees that a criminal defendant be free from postconviction incarceration achieved through state actors deliberately withholding or concealment of exculpatory and/or impeachment evidence." *Id.* at ¶ 339.

As shown by these allegations, Johnson believes that his claim against Baldwin stems, at least in part, from Baldwin's actions while he was functioning as an investigator, rather than a prosecutor. *See id.* at ¶¶ 333, 334. Johnson's belief is incorrect because allegations of coercing witnesses, like those against Baldwin here, fall into the prosecutorial role and thus, absolute immunity would still apply. *See Rose*, 871 F.2d at 344 (concluding that allegations that prosecutor coerced testimony for use in grand jury proceedings related to prosecutor's advocacy functions); *see also David v. Grusemeyer*, 996 F.2d 617, 630 n.28 (3d Cir. 1993) (explaining scope of "any legitimate prosecutorial role" in which absolute immunity would apply). More specifically, when a prosecutor's alleged actions involve "direct solicitations of testimony" in connection with a judicial proceeding, those actions fall within the scope of their role as an advocate. *Rose*, 871 F.2d at 344–45. Therefore, Johnson's allegations that Baldwin coerced testimony in *Johnson I & II* would not be considered outside the prosecutorial function and would not meet an established exception to prosecutorial immunity. *See Grusemeyer*, 996 F.2d at 630 n.28 ("Concerned with a prosecutor's authority to commit the acts in question, not with how faithfully a prosecutor performs those acts, courts have repeatedly extended absolute immunity to a prosecutor who suborns perjury, or even commits perjury or falsifies evidence, so long as the acts were done as part of the prosecutor's role in the judicial system.").

Regarding Johnson's allegations relating to Baldwin's failure to turn over *Brady* material, "prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). As such, despite defying a court order to disclose exculpatory evidence relating to Robles, Baldwin still did not abandon his prosecutorial role. *See id.*

Johnson seeks to avoid this conclusion by characterizing Baldwin's actions as investigative, quasi-judicial, and administrative. *See* Compl. at ¶¶ 333–36. Johnson alleges Baldwin defied a court order to provide truthful information regarding Robles.[22] *See id.* at ¶ 104. Such behavior—albeit highly unethical and improper—does not remove Baldwin's actions from a prosecutorial capacity. *See Yarris*, 465 F.3d at 137. Johnson also argues that Baldwin's conduct during *Johnson II*, namely Baldwin's misrepresentation during the pretrial conference to the court, was quasi-judicial rather than prosecutorial. *See* Compl. at ¶¶ 146–54, 333–34. Aside from Johnson's labels of Baldwin's actions, his factual allegations fall within Baldwin's prosecutorial role.

At bottom, despite Johnson's attempts to label Baldwin's acts differently, Johnson's allegations of Baldwin's misconduct do not fall outside Baldwin's prosecutorial role. Therefore, Baldwin is entitled to prosecutorial immunity on Johnson's Fourteenth Amendment individual liability claim and the court will dismiss this cause of action.

b.   Section 1983 Conspiracy

Johnson asserts that Baldwin conspired with Cabrera and Dietrich to violate Johnson's Fourteenth Amendment rights. *See id.* at ¶¶ 343–70. Johnson's conspiracy claim is based upon the

---

[22] Johnson appears to be referring to Baldwin's objection and supporting argument at sidebar in response to defense counsel's cross-examination of Robles. *See* Compl. at ¶¶ 98, 99, 100.

same allegations he advanced to support his individual liability claim. *Compare id.* at ¶¶ 330–41, *with id.* at ¶¶ 343–70. Because this court has determined Baldwin's alleged actions occurred in his prosecutorial capacity, he is also entitled to prosecutorial immunity from the conspiracy claim. *See Patterson v. City of Philadelphia*, Civ. A. No. 08-2140, 2009 WL 1259968, at *9 (E.D. Pa. May 1, 2009) ("The doctrine of absolute prosecutorial immunity precludes conspiracy-based claims[.]"). Accordingly, the court dismisses Johnson's section 1983 claim as it relates to Baldwin.

c.    Violations of the Pennsylvania Constitution

Johnson asserts a claim for damages against Baldwin arising as a result of Baldwin's deliberate actions to deprive Johnson of a substantive right or a protectable liberty interest conferred by Article 1, Sections 1, 8, and 26 of the Pennsylvania Constitution. *See* Compl. at ¶¶ 394–99. Specifically, Johnson avers that Baldwin deliberately withheld or concealed exculpatory evidence thereby depriving him of his Pennsylvania constitutional rights by denying him a fair trial. *See id.* at ¶ 398. As discussed above, the court must dismiss this claim because there is no private right of action for damages for violations of the Pennsylvania Constitution.[23] *See infra* Section II.B.1.d. Accordingly, because the Pennsylvania Constitution does not provide Johnson

---

[23] Baldwin argues that in the alternative, even if there was a private right to action, he would have immunity as a high public official acting within his official capacity. Br. in Supp. of Def., Mark C. Baldwin's Mot. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) at 13, Doc. No. 8-1. As stated above, this court has agreed that the facts alleged show Baldwin acted within his prosecutorial role. The remaining question would be whether Baldwin, as District Attorney for Berks County, qualifies as a high public official. The standard used to determine who qualifies as a "high public official" under Pennsylvania common law (1) depends on the nature of their duties, (2) the importance of their office, and (3) whether the role has policy-making functions. *Montgomery v. City of Philadelphia*, 140 A.2d 100, 105 (Pa. 1958); *see also Jonnet v. Bodick*, 244 A.2d 751, 753 (Pa. 1968) (declining to limit *Montgomery*'s application to defamation cases). The Pennsylvania Supreme Court has held that District Attorneys and Assistant District Attorneys qualify as a high official for purposes of immunity. *See, e.g., Durham v. McElynn*, 772 A.2d 68, 69–70 (Pa. 2001) (upholding grant of high public official immunity for assistant district attorney); *Lindner v. Mollan*, 677 A.2d 1194, 1198–99 (Pa. 1996) (citing favorably to several cases granting high official immunity to district attorneys). Therefore, even if there was a private right to action for damages based on a violation of the Pennsylvania Constitution, this court is satisfied that Baldwin would qualify as a high public official. Since his actions were taken within the scope of his official capacity, he would receive immunity from this claim. *See U.S. ex rel. Fear v. Rundle*, 506 F.2d 331 (3d Cir. 1974).

with a right to money damages for an alleged violation, the court will grant this part of Baldwin's motion to dismiss and dismiss this cause of action from the complaint.

## III.   CONCLUSION

For the reasons stated above, the court will grant the City Defendants' motion to dismiss with respect to Johnson's claims for violations of the Pennsylvania Constitution, his state-law abuse of process claim, and claims for punitive damages against the City. The court will deny the remainder of their motion. The court also will grant Baldwin's motion to dismiss in its entirety because he is entitled to absolute immunity from Johnson's federal civil rights claims and the Pennsylvania Constitution does not afford Johnson a right to recover against Baldwin.

"[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). Here, it would be futile to permit Johnson to replead these claims. *See id.* Accordingly, the court will dismiss with prejudice Johnson's claims (1) against the City Defendants for violations of the Pennsylvania Constitution, (2) against Cabrera and Dietrich for state-law abuse of process, (3) for punitive damages against the City, and (4) against Baldwin.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.