**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **RODERICK JOHNSON** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-04860-JMG |
| | : | |
| **CITY OF READING,** *et al.,* | : | |
| Defendants. | | |

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                        **December 12, 2025**

## I.    INTRODUCTION

Before the Court are three Motions for Summary Judgment concerning the seven remaining claims of Plaintiff's Complaint.[1] *See* ECF Nos. 119, 121, 123. Roderick Johnson ("Plaintiff" or "Johnson") was convicted of the murder of Damon Banks and Gregory Banks in November 1997. Months later, in July 1998, Plaintiff was convicted of the murder of Jose Martinez. In 2020, these convictions were vacated due to prosecutorial misconduct. With his convictions vacated, Plaintiff brought the instant action in which he asserts several claims under 42 U.S.C. § 1983 ("Section 1983") against the City of Reading ("Defendant Reading"), the County of Berks ("Defendant Berks") and several individual defendants who were members of the Reading Police Department for allegedly violating his constitutional rights. Now, Defendants have moved for summary judgment on all counts, and Plaintiff has moved for summary judgment on his *Monell* liability claims against Defendant Reading and Defendant Berks.

---

[1] A number of Plaintiff's original claims are no longer active. Several claims were dismissed by the Honorable Judge Edward G. Smith. *See* Order at ECF No. 58 (dismissing Counts IX, XI, XII of Plaintiff's Complaint, all claims against Defendant Mark Baldwin, and Plaintiff's claim for punitive damages against Defendant Reading). Several other claims were voluntarily dismissed. *See* Order at ECF No. 125 (dismissing Counts III, X, and XI of Plaintiff's Complaint).

## II.    PROCEDURAL HISTORY

Roderick Johnson initiated this civil action in 2021 in Berks County Court of Common Pleas by filing a complaint against several defendants, including the City of Reading, the County of Berks, Detective Angel Cabrera ("Cabrera"), Detective Bruce Dietrich ("Dietrich"), former Berks County District Attorney Mark Baldwin ("Baldwin"), and Edward Ratajack ("Ratajack"), the executor of the Estate of Joseph Stajkowski ("Stajkowski"), the former Chief Detective for the Berks County Detective Bureau. On November 4, 2021, the City of Reading and Cabrera removed this action to federal court.

Shortly thereafter, Defendants filed Motions to Dismiss, and the Honorable Judge Edward G. Smith ("Judge Smith") resolved those motions on February 6, 2023. Baldwin also filed a Motion to Dismiss all claims against him. He claimed that he was entitled to absolute immunity. *See* ECF No. 8-1. Judge Smith granted Baldwin's Motion and held that all claims against Baldwin were dismissed with prejudice. Judge Smith also granted, in part, Defendant Reading's Motion to Dismiss as to Counts IX (violations of Pennsylvania Constitution against Defendant Reading), XI (violations of Pennsylvania Constitution against Defendants Cabrera and Dietrich) and XII (abuse of process against Defendants Cabrera and Dietrich) of Plaintiff's Complaint, as well as Plaintiff's claims for punitive damages against Defendant Reading. *See* ECF No. 58.

After the passing of Dietrich, Judge Smith granted Plaintiff's Motion to Substitute (ECF No. 39) and Eileen Cardile, in her capacity as personal representative of the estate of Bruce Dietrich, was substituted as a defendant in the case. *See* Order at ECF No. 83.

The remaining claims against Defendants Reading, Cabrera, and Dietrich include: Fourteenth Amendment Municipal Liability against the Defendant Reading (Count I); Fourteenth

Amendment claims against Cabrera (Count IV); Fourteenth Amendment claims against Dietrich (Count V); Fourteenth Amendment conspiracy against Cabrera and Dietrich (Count VII); and civil conspiracy under Pennsylvania law against Cabrera and Dietrich (Count XIII). *See* ECF No. 120. The remaining claims as to Defendants Berks and Ratajack include: Fourteenth Amendment Municipal Liability against Berks (Count II) and Fourteenth Amendment Individual Liability for failure to intervene against Ratajack. *See* ECF No. 122.

On November 8, 2024, both Plaintiff and Defendants filed Motions for Summary Judgment. Defendants filed Motions for Summary Judgment on all counts (ECF Nos. 119 and 123), while Plaintiff filed a Motion for Summary Judgment on his *Monell* liability claims against Defendant Reading and Defendant Berks (ECF No. 121).

### III.    FACTUAL BACKGROUND

This action arises from the investigation, prosecution, and ultimate vacatur of the criminal convictions of Plaintiff Roderick Johnson, who spent more than two decades incarcerated before his charges were dismissed in 2020 following judicial findings of prosecutorial misconduct.

In 1996, the Reading Police Department investigated the deaths of Damon and Gregory Banks. The investigation was led in substantial part by Detectives Angel Cabrera and Bruce Dietrich of the Reading Police Department. Cabrera and Dietrich's role included, among other things, filing police reports and interviewing witnesses. During the investigation, officers identified George Robles ("Robles") as a potential witness. Robles ultimately provided statements implicating Johnson, including assertions that Johnson possessed a .38-caliber revolver similar to the firearm recovered near the crime scene. This became a central piece to the prosecution's case. Mark Baldwin was the prosecutor assigned to manage the prosecution of

Johnson, and Johnson was convicted by a jury of two counts of first-degree murder. Johnson was subsequently sentenced to death.

In January 1997, Johnson was charged with the murder of Jose Martinez. Cabrera and Dietrich were also involved in this investigation, and Baldwin was again assigned to manage the prosecution of Johnson. In July 1998, a jury convicted Johnson of one-count of first-degree murder and the trial court imposed a sentence of life imprisonment to run consecutively with the death sentence in the prior matter.

Johnson challenged his convictions and pursued relief through the Post-Conviction Relief Act ("PCRA") and federal habeas corpus litigation. During the proceedings, a court order compelled disclosure of previously undisclosed police reports concerning Robles. Those reports detailed multiple incidents in which Robles had been investigated by the Reading Police Department for gun-related events, drug activity, and other criminal conduct. The reports also indicated that Robles had frequent interactions with Cabrera and Dietrich and was seeking favorable treatment while providing information to the police. None of these materials had been disclosed to Johnson or his trial counsel prior to trial. Johnson alleges that these reports would have provided significant impeachment material regarding Robles's credibility.

Johnson further alleges that Cabrera, Dietrich, and Baldwin manipulated and coached material witnesses George Robles, Luz Cintron ("Cintron"), and Mylta Velazquez ("Velazquez"). Moreover, Johnson claims that Baldwin, the lead prosecutor in both cases, suppressed relevant reports and failed to disclose material evidence to the defense. Plaintiff also claims that there was a conspiracy among Baldwin, Cabrera, and Dietrich to withhold the Robles-related evidence, present misleading testimony, and create a false impression of Robles

as a reliable, law-abiding witness. Plaintiff argues that because of this alleged suppression and manipulation, his due process rights were violated.

In 2015, the Berks County Court of Common Pleas vacated Johnson's convictions and granted him a new trial. Subsequent litigation confirmed that the nondisclosure was not the result of inadvertence but rather, it constituted prosecutorial misconduct.[2] Based on those findings, the Berks County Court of Common Pleas dismissed the charges against Johnson with prejudice on double-jeopardy grounds in October 2020. Johnson was released from custody shortly after.

Following his release, Johnson commenced the instant action asserting federal and state-law claims against several defendants: The City of Reading, Detectives Cabrera and Dietrich, the County of Berks, Mark Baldwin, and Edward Ratajack, executor of the Estate of Joseph Stajkowski.

In this action, Johnson seeks damages stemming from his wrongful convictions and asserts that his constitutional rights were violated due to evidence being suppressed. He alleges that the officers and prosecutors knowingly withheld exculpatory and impeachment evidence, manipulated witness testimony, and conspired to secure his conviction despite the absence of reliable evidence. He further alleges that the Defendants maintained policies or customs that permitted such constitutional violations to occur.

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 56(c) provides that the district court must "grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

---

[2] The Court attributed the prosecutorial misconduct and due process violations to actions of the then District Attorney, Mark Baldwin. While Baldwin was a named defendant in this matter, Judge Smith dismissed all claims against him on February 6, 2023.

(1986). Essentially, the Court must analyze "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. A genuine issue of fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). At this stage of litigation, all facts presented are viewed in the light most favorable to the nonmoving party. *Daniels v. City of Pittsburgh*, 2023 WL 2707178, at *2 (3d Cir. Mar. 30, 2023).

To survive a properly supported motion for summary judgment, the nonmoving party must present affirmative evidence of specific facts to demonstrate a genuine issue of material fact. *Anderson*, 477 U.S at 256-57; *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citing *Pa. Prot. & Advocacy, Inc. v. Pa. Dep't of Pub. Welfare,* 402 F.3d 374, 379 (3d Cir.2005)) ("Although the non-moving party receives the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact."). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Colkitt*, 455 F.3d at 201; FED. R. CIV. P. 56(c)(1)(A) (requiring any party asserting a fact to "cit[e] to particular parts of materials in the record"). Statements of Disputed Facts are not evidence, and a "district court may not rely solely on [them]" to justify a finding that a dispute of material fact exists. *Doeblers' Pennsylvania*

*Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006) (internal citation omitted).

In applying this standard, the Court should ordinarily "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the Court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the Court's task is to identify and explain the law governing the matter, and then, in light of that law, determine whether there remains a genuine issue of fact for trial. *Id.*

When there are cross-motions for summary judgment, as there are here, the standard of review does not change. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). However, if "upon review of cross motions for summary judgment [the Court] find[s] no genuine dispute over material facts, then [the Court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).

### a. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when

they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

An inquiry as to whether qualified immunity shields an actor from liability is two-pronged. First, the Court must decide whether the facts alleged, taken in the light most favorable to the nonmoving party, show that the officer's conduct violated a federal right, Second, if the first step is satisfied, the Court must decide whether the right in question was "clearly established" at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). If either of these prongs is answered in the negative, qualified immunity applies. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

## V.    ANALYSIS

### a.    Defendants Are Entitled to Summary Judgment on Plaintiff's *Monell* Claims

Plaintiff brings Section 1983 claims against the Defendant Reading and Defendant Berks on the basis of municipal liability as the Supreme Court recognized in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978). Notably, "a municipality is not liable for the unconstitutional acts of its employees just because of their employment, under a *respondeat superior* theory." *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (citing *Monell*, 436 U.S. at 691). Rather, "liability is imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)). *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("Municipal liability is limited to action for which the municipality is actually responsible."). Moreover, "if the alleged policy or custom at issue is a failure to train or supervise, the plaintiff must show that this failure

amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact." *Id.* (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). This typically requires "a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary…" *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely… result in the violation of rights" such that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

To prevail on his *Monell* claims against Defendant Reading and Defendant Berks, Plaintiff must establish that: (1) the municipality had a policy or custom that deprived him of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) Plaintiff's injury was caused by the identified policy or custom. *Bell v. City of Phila.*, 629 F. App'x 214, 216 (3d Cir. 2015); *Pelzer v. City of Philadelphia*, 656 F.Supp.2d 517, 531-32 (E.D.Pa. 2009) (*citing Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403-404 (1997)). It is well settled that if there was no constitutional violation in the first place, then there can be no derivative municipal claim. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). For these purposes, a municipal policy encompasses a "statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Smith v. Luzerne Cnty. FBI Agency*, 517 F. App'x 65, 66 (3d Cir. 2013) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). A custom "need not have received formal approval through official decision-making channels, but it must have the force of law by virtue of the persistent practices of municipal officials." *Id.* (citing *Brown*, 269 F.3d at 215). There must be a "direct causal link between the municipal policy or custom

and the alleged constitutional deprivation. *Natale v. Camden Cnty. of Corr. Facility*, 318 F.3d 575, 585 (3d Cir. 2003) (quoting *Bd. Of the Cty. Comm'rs of Bryan Cty v. Brown*, 520 U.S. 397, 404 (1997)). Plaintiff "must establish the existence of each element on which it bears the burden of proof. *Hrezik v. Moyer*, 2012 WL 162334 at *10 (E. D. Pa., Jan 19, 2012).

As noted above, failure to properly train employees can create a custom or policy for purposes of Section 1983 liability, if such failure is tantamount to "deliberate indifference to the constitutional rights of a person with whom the police come in contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Accordingly, "not all failures or lapses in training will support liability under § 1983." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005).

To establish deliberate indifference, Plaintiff must show a "pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). In other words, Plaintiff must demonstrate that Defendant Reading and Defendant Berks were on notice of deficient training regimens through a pattern of prior violations. *Connick*, 563 U.S. 51 (2011). ("Without notice that a course of training is deficient, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional violations."); *see also Berg v. Cnty of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

Defendant Reading contends that Plaintiff's Partial Motion for Summary Judgment is extremely limited. Moreover, Defendant Reading argues that Plaintiff failed to differentiate the acts and actions of Defendant Reading and Defendant Berks, despite being separate legal entities. In addition, Defendant Reading points out that the facts asserted against both Defendants are very different, and each played vastly different roles, both factually and legally, in the underlying matters. In addition, Defendant Reading contends that Plaintiff has failed to establish that there was a threshold underlying constitutional violation which Defendant Reading may be

10

deemed to have caused by operation of its policies, customs, or training, a necessary predicate element to any *Monell* claim.

Defendant Berks similarly argues that Plaintiff offers no law, facts, or argument on the matter, nor does he contend the principles of finality prohibit litigation on the issue. Moreover, Defendant Berks contends that Plaintiff's assertions are so underdeveloped to the point of effective waiver and that even assuming the argument is not waived, Plaintiff has failed to establish a deliberate indifference theory of municipal liability.

Plaintiff argues that the testimony of several witnesses has established that neither Defendant Reading nor Berks had a policy of training in place to deter discovery violations in criminal cases. Plaintiff further contends that, under *Monell*, he has established an officially adopted or promulgated policy that is a "failure to turn over exculpatory or impeachment material in criminal cases, by way of Mr. Cabrera's failure to disclose to Mark Baldwin, the prosecutor, Cabrera's longstanding relationship with the prosecution's star witness, George Robles." Pl.'s Mot. for Summ. J., at ECF No. 121-1. Plaintiff also presents a "custom or practice that is not written or formally adopted, but that is a pervasive, long-standing practice that has the force of law. That is, the police routinely withheld *Brady* and *Giglio* material from defendants in criminal cases." *Id.*

The Court finds Plaintiff has not met his burden to establish a viable claim under Section 1983. The *Monell* inquiry asks whether a municipality was deliberately indifferent to the risk of a constitutional violation. Yet, Plaintiff has failed to establish that there was an underlying constitutional violation, which is a necessary predicate element to any *Monell* claim. Because Plaintiff has not shown an underlying constitutional violation, his derivative *Monell* claims against Defendant Reading and Defendant Berks necessarily fail. A municipality may be held

liable under *Monell* only when a plaintiff demonstrates that a constitutional injury resulted from an official policy, practice, or custom. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). Absent proof of underlying constitutional harm, there can be no municipal liability as a matter of law. *Brown v. Commonwealth of Pa.*, 318 F.3d 473, 482 (3d Cir. 2003).

Moreover, Plaintiff has failed to produce any evidence to support any of the elements of his *Monell* claim. He has failed to establish that Defendant Reading or Defendant Berks had a policy that deprived him of any constitutional right, that Defendant Reading or Defendant Berks acted deliberately, or that a policy or custom caused the alleged violation. Even if Plaintiff had demonstrated an underlying violation (which he has not), he has not identified a deficient policy, custom, or practice of Defendant Reading or Defendant Berks regarding disclosure of exculpatory or impeachment material in the relevant timeframe, from 1996 through 1998. While he mentions an "officially adopted or promulgated policy that is a failure to turn over exculpatory or impeachment material in criminal cases," and that "police routinely withheld *Brady* and *Giglio* material," he does not provide evidence to support those allegations. Pl.'s Mot. for Summ. J., at ECF No. 121-1. While Plaintiff contends that Defendant Reading and Defendant Berks had customs or policies that resulted in the failure to train its officers to disclose exculpatory information to the District Attorney's Office, he has not identified an underlying pattern of violations to support a failure to train theory.

In sum, Plaintiff has not identified sufficient evidence to establish that he suffered a deprivation of a constitutional right by Defendant Reading or Defendant Berks. As stated, there can be no derivative *Monell* claim against Defendant Reading in the absence of a constitutional violation in the first place. *See Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992); *Kaszuba v. Borough of Dickson City*, 779 F. App'x 980, 983 (3d Cir. 2019); *Atkins v. Borough of*

*Phoenixville*, 336 F.Supp.3d 511, 521 (E.D.Pa. 2018). Plaintiff has failed to meet his burden, and as a result, his *Monell* claims fails. Accordingly, Plaintiff's Partial Motion for Summary Judgment against Defendant Reading and Defendant Berks is denied, while Defendant Reading and Defendant Berks' Motions for Summary Judgment are granted.

### b.  Individual Liability Alleged Against Defendants Dietrich & Cabrera

Next, Plaintiff brings Section 1983 claims against Defendants Cabrera and Dietrich individually and alleges that Cabrera and Dietrich violated his constitutional rights. Specifically, he alleges that Cabrera and Dietrich, *inter alia*, deliberately withheld exculpatory and impeachment evidence from him, permitted the testimony of witnesses known to be perjured to be used in his two criminal trials, and deliberately chose not to charge potential witnesses with criminal behavior for the purpose of creating a false impression of the witnesses' lawfulness. Pl.'s Comp. at ¶¶ 277–329. Johnson contends that these actions deprived him of his due process rights under the Fourteenth Amendment.

To be successful under Section 1983, Plaintiff "must show that the [Defendants], under color of state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the constitution or laws of the United States." *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003) (citing 42 U.S.C. § 1983). However, "Section 1983 is not a source of substantive rights and does not provide redress for common law torts." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Rather, the plaintiff must allege a violation of a federal right. *Id.* As noted, Plaintiff alleges violations of his Fourteenth Amendment rights against Dietrich and Cabrera. The Court will address each alleged violation in turn.

### i. Cabrera and Deitrich Are Entitled to Qualified Immunity On Plaintiff's Fourteenth Amendment Denial of Fair Trial (*Brady*) Claim

Defendants Dietrich and Cabrera contend that they are shielded from Plaintiff's *Brady* claim because there was no clearly established duty to disclose exculpatory or impeachment evidence at the time of the investigations and trials at issue in this case. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity balances two important interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.*

In resolving claims of qualified immunity, courts must decide: (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Where the law does not put the government official on notice that his conduct is unlawful, qualified immunity applies. *See Bayer v. Monroe County Children and Youth Serv.*, 577 F.3d 186, 193 (3d Cir. 2009). The Supreme Court has held that a government official's conduct violates clearly established law "when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The constitutional issue in this case fails to meet that indispensable threshold.

As the Third Circuit has explained, there is a high hurdle for Plaintiff to overcome because qualified immunity "provides ample protection to all but the plainly incompetent, or those who knowingly violate the law." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004). The Third Circuit's decision in *Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police*, 411 F.3d 427 (3d Cir. 2005) is determinative, and Plaintiff's claim is foreclosed.[3] In *Gibson*, the Court determined that "police officers and other state actors may be liable under § 1983 for failing to disclose exculpatory information to the prosecutor." *Id.* at 443. However, the *Gibson* court also recognized that this was not a "clearly established right" at the time of the alleged violation, which in that case, was 1994. *See id.* Years before *Gibson*, the Third Circuit decided *Smith v. Holtz*, 210 F.3d 186 (3d Cir. 2000), where the panel "was only able to *assume* that police officers 'have an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence exists.'" *Gibson*, 411 F.3d at 444 (quoting *Smith*, 210 F.3d at 197) (emphasis added). Because such a right was not clearly established in the Circuit at the time of Gibson's convictions, the *Gibson* panel found that qualified immunity applied regarding the failure to inform the prosecutor of *Brady* material. *Id.*[4]

---

[3] For our purposes, Third Circuit precedent constitutes clearly established law. *See City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 43 (2019); *see also Dennis v. City of Phila.*, 19 F.4th 279, 288 (3d Cir. 2021) ("Only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate.").

[4] *Gibson* similarly forecloses the argument made by Plaintiff that the Supreme Court opinion in *Kyles v. Whitley*, 514 U.S. 419 (1995), rendered this right "clearly established." *Gibson* differentiates between the holding of *Kyles*, that is "that evidence in the hands of the police could be imputed to the prosecutor," *see Gibson*, 41 F.3d at 443, and "the *related duty* of the police to disclose information to the prosecutor." *Id.* at 444 (emphasis added). The Court clarified that, the related duty of the police to disclose information to the prosecutor was not widely addressed until later. Even in 2000, the Court was only able to *assume* that police officers had an affirmative duty to disclose exculpatory evidence to an accused if only by informing the prosecutor that the evidence existed.

Here, the alleged violations occurred between 1996 and 1998. At the time of the relevant conduct in this case, there was no duty on **law enforcement** to disclose evidence favorable to the accused to the prosecutor. *See Gibson*, 411 F.3d at 431, 445 (holding that, in 1994, it was not clearly established that police officers had a duty to disclose exculpatory or impeachment evidence to the prosecutor).[5] The violations alleged by Plaintiff occurred before this right was clearly established.[6] Cabrera and Dietrich are entitled to qualified immunity because it was not clearly established that they could be liable under *Brady* until *Gibson* was decided in 2005.[7]

### ii. Cabrera and Dietrich Are Entitled to Summary Judgment on the Fourteenth Amendment Fabrication of Evidence Claim

Plaintiff also bases his Section 1983 claim on a second alleged constitutional violation. He alleges that Defendants violated his rights under the Fourteenth Amendment by fabricating

---

[5] The Court recognizes that, under *Brady v. Maryland*, the suppression of evidence by the prosecution favorable to an accused violates due process where the evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The duty to disclose evidence favorable to the accused "applies only to the prosecutor." *Gibson v. Superintendent*, 411 F.3d 427, 442 (3d Cir. 2005).

[6] In his Supplemental Memorandum of Law, Plaintiff concedes that under *Gibson*, Cabrera and Dietrich are entitled to qualified immunity for failing to disclose exculpatory materials during his trials. However, Johnson argues that this immunity does not extend "to their post-2005 conduct." The Court is not persuaded by this argument. Not only are these allegations raised for the first time in Plaintiff's Supplemental Memorandum of Law, but Plaintiff has also not advanced any facts to support post-2005 conduct that allegedly violated his rights nor did he conduct discovery on any post-conviction conduct. *See Parker v. School District of Philadelphia*, 823 Fed. App'x. 68, 72-73 (3d Cir. 2020) (holding that "summary judgment cannot be defeated by speculation and conjecture" and that allegations raised for the first time in summary judgment briefing, without any support in the record, are insufficient to defeat summary judgment).

[7] The Court does not stand on an island in making this determination and instead joins several other district courts in the Eastern District of Pennsylvania. *See Ogrod v. City of Phila.*, 598 F. Supp. 3d 253, 267-68 (E.D. Pa. 2022) (concluding that the "duty under the due process clause and *Brady* to disclose exculpatory evidence was not clearly established in 1996 when [the plaintiff] was convicted of [victim's] murder."); *Outlaw v. City of Phila.*, Civ. A. No. 21-1290, 2021 WL 3471168, at *5-6 (concluding that law was not "clearly established" until the Third Circuit's decision in *Gibson*); *Gilyard v. Dusak*, Civ. A. No. 16-2986, 2018 WL 2144183, at *5 (finding that the right was not clearly established for an alleged 1998 violation); *Lewis v. City of Phila.*, Civ. A. No. 19-2847, 2020 WL 1683451, at *10 (finding that the right was not "clearly established" for an alleged 1997 violation).

evidence. For this claim, Defendants do not invoke the qualified immunity defense. Instead, they argue that Plaintiff has failed to come forward with evidence that Cabrera or Dietrich coerced any witnesses or otherwise fabricated evidence, and as a result, his claim fails. This Court agrees.

Plaintiffs who bring a Section 1983 claim alleging they had been convicted in a criminal prosecution in which the prosecutor fabricated evidence will not survive a motion for summary judgment "unless he can demonstrate that the record supports a conclusion that the allegedly fabricated evidence was so significant that it could have affected the outcome of the criminal case." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). In addition, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* Instead, plaintiff must have "persuasive evidence supporting a conclusion that the proponents of the evidence… offered the evidence in bad faith." *Id.* Plaintiff must demonstrate a "meaningful connection between the injury and the fabricated evidence." *Boseman v. Upper Providence Twp.*, 680 F.App'x 65, 69 (3d Cir. 2017) (quoting *Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016)). As the Third Circuit has explained, these hurdles are significant and "it will be an unusual case" in which an officer cannot obtain summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case. *Halsey*, 750 F.3d at 295.

This is not the unusual case referenced in *Halsey*. Here, Plaintiff is unable to survive Defendants' Motion for Summary Judgment as to this claim. To start, Plaintiff is unable to put forth evidence that Cabrera or Dietrich "coached George Robles to testify falsely about his criminal activity to hide Cabrera's and Dietrich's own activity." Pl.'s Response in Opposition to Defendant's Mot. for Summ. J., at ECF No. 136. Plaintiff has not put forth any evidence that Cabrera or Dietrich fabricated evidence used in his criminal prosecution, nor has Plaintiff

17

identified any evidence that was false, incorrect, or offered in bad faith. Although Plaintiff alleges that Cabrera and Dietrich chose not to charge Robles in an attempt to create a false impression of Robles' character trait of lawfulness to obtain a conviction, none of these claims have evidentiary support in the record.[8] And while Plaintiff states that it "has been found that Robles testified falsely" and that Cintron and Velazquez "provided statements that they were coerced into testifying falsely," the purported evidence that Plaintiff cites in his briefing does not provide support for these allegation such that it raises a genuine issue of material fact that would defeat Defendants' Motion for Summary Judgment.

Plaintiff also alleges a "plethora of evidence" that Cabrera and Dietrich fabricated evidence, "coached Robles to testify falsely about his criminal activity to hide [their own] activity" and "coerced and coached Luz Cintron and Mylta Velazquez to testify falsely against Johnson." Pl.'s Response in Opposition to Defendant's Mot. for Summ. J., at ECF No. 136. Plaintiff contends that "it is clear that Cabrera and Dietrich knew that the witnesses that they were presenting to lead officers… were providing false information, that these witnesses were crucial to the prosecution of Johnson, and this false testimony would violate Johnson's right to a fair trial." *Id.* Plaintiff also alleges that Velazquez gave a statement to non-party Detectives Vega and Schade, in which she stated that Plaintiff confessed to killing Jose Martinez. Velazquez later testified at trial under oath and, consistent with her statement, testified that Plaintiff told her that he was the one who shot Jose Martinez. Furthermore, Plaintiff alleges that Cintron gave a statement to non-party Detective Vega, which was witnessed by Cabrera, in which she stated that she had overheard two separate conversations in which Robles was told that Plaintiff shot a man. Cintron later testified under oath. Despite these facially concerning allegations, Plaintiff has

---

[8] Furthermore, whether to charge someone with a crime rests within the discretion of the prosecutor, not with police detectives. *See Wayte v. United States*, 470 U.S. 598, 607 (1985).

produced no evidence that Cabrera or Dietrich coerced, coached, or manipulated Velazquez or Cintron into their statements or testimony. Moreover, Plaintiff has not presented any evidence that the statements or testimony were false, incorrect, or fabricated, nor is there any indication that they were offered in bad faith by any named Defendant.

Robles also gave a statement to Dietrich, which Cabrera witnessed, in December 1996. Robles told Cabrera and Dietrich that Johnson told him he was the person who shot Jose Martinez. Subsequently, at trial, Robles testified under oath and described how Plaintiff told him that he shot a man in November 1996. While Plaintiff alleges that Cabrera and Dietrich coached and coerced Robles' testimony, the undisputed facts presented in this case do not support this claim. While it is accurate that Cabrera and Dietrich were present for Robles' statement, there is no evidence that Robles' statement or testimony was false, incorrect, fabricated, or developed in bad faith.

In sum, the record lacks specific allegations concerning what evidence Cabrera and Dietrich allegedly fabricated. While it appears that Plaintiff's claim centers on allegations that Cabrera and Dietrich manipulated, coached, and coerced key witnesses, none of these claims have evidentiary support in the record and accordingly fail.

### c. Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1983 Conspiracy and Common Law Conspiracy Claims

Next, Plaintiff claims that Cabrera and Dietrich conspired to violate his constitutional rights in violation of Section 1983 and Pennsylvania's common law conspiracy tort. To establish a conspiracy claim under Section 1983, Plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Rosembert v. Borough of E. Lansdowne*, 14 F.Supp.3d 631, 647 (E.D. Pa. 2014). To establish the conspiracy element, a plaintiff must allege (1) an actual agreement

among the co-conspirators or a "meeting of the minds" and (2) concerted action in furtherance of that agreement. *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). In stating a claim for conspiracy under Section 1983, a plaintiff is required to "expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such agreement can be inferred." *Flanagan*, 783 F.Supp. at 928. Such averments must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. *Id.* In most cases, "a bare conclusory allegation of conspiracy… will not suffice." *Id.*

To establish a civil conspiracy under state law, Plaintiff must establish that "two or more persons combined or agreed with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979). Plaintiff must also establish proof of malice. In other words, an intent to injure is essential to prove a conspiracy. *Id.* Moreover, the "unlawful intent must be absent justification." *Id.* A conspiracy "becomes actionable when some overt act is done in pursuance of the common purpose or held by the conspirators" and actual legal damage must result from the conspiracy. *See Baker v. Rangos*, 324 A.2d 498, 506 (Pa. Super. 1974).

For his Section 1983 claim, Plaintiff asserts that Cabrera and Dietrich, together with Baldwin, conspired to unlawfully withhold evidence, coach material witnesses, and withhold criminal charges of witnesses, in violation of his constitutional rights. Pl.'s Comp., at ECF No. 1. For his state-law conspiracy claim, Johnson alleges that Cabrera and Dietrich conspired to subject him to "prolonged incarceration, loss of liberty, and death." *Id*.

However, Plaintiff has not presented evidence sufficient to establish a Section 1983 conspiracy claim because, as discussed, he has failed to establish an underlying deprivation of

rights in furtherance of the conspiracy. Even assuming there was an underlying constitutional violation, Plaintiff's conspiracy claims still fail because he has not sufficiently alleged a conspiracy. Plaintiff alleges that Cabrera and Dietrich were intimately involved in the criminal investigations of the murders for which he was imprisoned and that they worked closely with Baldwin for the purpose of convicting Johnson. Plaintiff further alleges that Cabrera, Dietrich, and Baldwin had an "understanding, agreement, or a meeting of the minds that they would obtain a conviction of the Plaintiff of the crimes charged by unconstitutional means" including suppressing or failing to disclose impeachment evidence; "manipulating and coaching" material witnesses; using "perjured testimony" of witnesses to obtain a conviction; "coercing and influencing" the testimony of witnesses, suborning perjury, fabricating evidence, and "choosing not to charge witnesses with criminal behavior for the purpose of creating a false impression of the witnesses' character trait of lawfulness to gain a tactical advantage." Pl.'s Compl., at ECF No. 1. Despite these allegations, Plaintiff has put forth no facts to support that any of the alleged conspirators ever met, discussed, or reached such an agreement to obtain Plaintiff's conviction by unconstitutional means. Moreover, Plaintiff has not put forth any evidence to support any acts Dietrich or Cabrera took in furtherance of the alleged conspiracy, or facts supporting that they acted with malice or with an intent to harm Johnson. Plaintiff's unsupported allegations on these issues are insufficient to survive.

### d. Defendant Ratajack Is Entitled to Summary Judgment on Plaintiff's Failure to Intervene Claim

Plaintiff brings a claim against the Stajkowski Estate, alleging that Stajkowski failed to intervene to prevent the unconstitutional violations of Cabrera, Dietrich, and Baldwin. Defendants argue this claim is barred under the doctrine of qualified immunity. The Court agrees and finds that qualified immunity shields the Stajkowski Estate from this claim.

In reaching this conclusion, the Court is guided by the Third Circuit's opinion in *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023). The Third Circuit has not recognized a **general** right to intervene against **any** constitutional violation. *See id.* ("Though we have recognized a right to have a government actor intervene when the constitutional violation involves **excessive force** or **sexual assault** of a person in custody or detention, we have since concluded that our precedent does not establish, let alone clearly establish, a right to intervention in other contexts." (emphasis added)). In *Thomas*, the panel denied qualified immunity for the failure to render medical care, and it found that this right had been clearly established. *See id.* at 284-85. Nevertheless, the panel still determined that there was "not a clearly established right to intervention **to prevent a violation of the right to medical care**." *Id.* at 286 (emphasis added).

Based on this precedent, the Court rejects Plaintiff's argument that because there is a clearly established right against fabricating evidence, there must be a clearly established right of intervention to prevent a violation of the right against fabricating evidence.[9] *See White v. City of Phila*, 2024 WL 2027390, at *6-8 (E.D. Pa. May 6, 2024) ("There is no clearly established duty of an officer to intervene to prevent another state actor from engaging in deliberate deception (citing *Oniyah v. City of Phila*, 660 F. Supp. 3d 407, 416 (E.D. Pa. 2023))); *see also Oniyah*, 660 F. Supp. at 416 (holding "no clearly established duty to intervene outside of the excessive force context."); *Womack v. City of Phila.*, 2024 WL 4466680, at *8 (E.D. Pa. Oct. 10, 2024) (same).

---

[9] Plaintiff cites several cases which discuss the duty to intervene in the context of excessive force claims. *See Bryant v. City of Phila.*, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012); *Smith v. Mensinger*, 293 F.3d 641, 650-52 (3d Cir. 2002) (finding failure to intervene may be basis of liability in the context of excessive force). Plaintiff might find some support for his argument in *Barnett v. City of Phila.*, 498 F. Supp. 3d 700, 713 (E.D. Pa. 2020), which allowed a failure to intervene claim to proceed in the context of an underlying allegation of a false arrest. *See also Brown v. Harris*, Civ A. No. 20-5354, 2022 WL 824236, at *5 (citing other courts in this District that have allowed a failure to intervene claim to proceed in the context of a false arrest). However, the Court declines to read *Barnett* as broadly as Plaintiff would like, especially in the context of the Third Circuit's subsequent decision in *Thomas*, 88 F.4th at 285.

Because there was no violation of a clearly established constitutional right, the Court will grant the Defendants' Motion for Summary Judgment as to this issue.

### a. Plaintiff's Claim for Punitive Damages Against Cabrera and Dietrich Fail

Because the Court concludes that none of Plaintiff's claims survive summary judgment, there remains no underlying cause of action upon which an award of punitive damages could be based. Punitive damages are derivative in nature and cannot stand in the absence of a viable claim for liability. *See Gilbert v. Bionetics Corp.*, 2000 WL 807015, at *9 (E.D. Pa. June 6, 2000) ("It is axiomatic that a claim for punitive damages arises out of the underlying cause of action, and therefore, absent a viable cause of action, an independent claim for punitive damages cannot stand."). Moreover, even if any underlying claim survived, Plaintiff has not adduced evidence that could meet the heightened standard required to support an award of punitive damages, and no reasonable jury could find conduct rising to that level.

Courts "cannot impose a punitive damage award against an official acting in his or her individual capacity unless the actor's conduct is, at a minimum, reckless or callous." *Startzell v. City of Philadelphia*, 2007 WL 172400, at *22 (E.D. Pa. Jan 18, 2007) (citing *Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2003)). Punitive damages can be awarded if the actor's conduct is intentional or motivated by evil intent, but the action itself is not required to meet this high burden. *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). Here, Plaintiff has not introduced sufficient evidence in the record to support a finding that Cabrera and Dietrich's involvement in the investigation of the murders at issue, including assisting other departments and the lead investigator by taking some statements, and by providing the District Attorney with information regarding Robles, callously and recklessly disregarded his "constitutional rights." Accordingly, to the extent Plaintiff seeks punitive damages, that request fails as a matter of law.

### D.    CONCLUSION

The Court finds no reasonable factfinder could reach a judgment for the Plaintiff, even drawing all inferences in his favor. Favorable inferences must flow from the facts, not the other way around. Plaintiff was required to put forth evidence to generate a genuine dispute of material fact, and the Court finds he has not done so. Therefore, Plaintiff's Motion for Summary Judgment (ECF No. 121) is **DENIED**, while the Motions for Summary Judgment by Defendants (ECF Nos. 119 and 123) are **GRANTED**. An appropriate Order follows.


BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge